IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

EDWARD KIM,                                              Civ. No. 3:15-cv-2029-PA

               Plaintiff,                              **OPINION AND ORDER**

      v.

PRUDENTIAL FINANCIAL, INC.,

               Defendant.

_____

PANNER, Senior District Judge.

      This matter comes before the Court on Defendant's Motion to Dismiss (#10). For the reasons set forth below, Defendants' Motion is GRANTED. Plaintiff shall have thirty (30) days to file an amended complaint.

## BACKGROUND

      Plaintiff Edward Kim is an Asian-American businessman with decades of experience in insurance services and the financial industry. Plaintiff operated his own company, Hawaii Pacific Insurance Corp., from 1984 until he sold the business in 2011.

      Defendant Prudential Financial Inc. ("Prudential") provides financial services to individuals and businesses, including investment services and insurance.

At some point, Plaintiff was approached by two of Prudential's managers, Randy Cox ("Cox") and David Johnston ("Johnston") with an offer of employment with Prudential. Plaintiff alleges that Cox and Johnston promised him that he would be responsible for Hawaii. Plaintiff alleges that the promise of the Hawaii territory induced him to accept the offer from Prudential.

On April 25, 2014, Plaintiff received an offer letter from Prudential which described his position as "Regional Sales Vice President for Prudential's Oregon territory." The base salary for the position was $85,000 per year with benefits, plus bonus and commission incentives. Plaintiff accepted the offer and began working for Prudential on May 5, 2014. Plaintiff alleges that his responsibilities included Oregon and parts of Washington, and that Cox promised that Plaintiff would also receive the Hawaii territory.

Plaintiff attended a new-employee orientation, where he learned that another employee had been promised the Hawaii territory as "part of a resolution to a conflict over some other promises that were not being honored." Plaintiff contacted Cox, who reiterated that Plaintiff was to receive the Hawaii territory and that the issue would be resolved. Plaintiff believed that Cox presented the matter to Johnston, but Plaintiff did not receive the Hawaii territory.

At some point, Plaintiff initiated an internal complaint alleging that he was being denied the Hawaii territory because of race and color discrimination, either against Cox, who is African-American, or against Plaintiff himself. Plaintiff alleges that Prudential conducted only a cursory investigation into the allegations before concluding that there was no evidence of discrimination or unfair treatment.

At some point, Cox left his position with Prudential. Plaintiff believes that Cox's departure was related to racial discrimination. Plaintiff applied for promotion to Cox's position,

but the position was filled by "a non-Asian who had much less experience than Plaintiff in the industry."

Plaintiff alleges that management ignored him at social events and gave him "the cold shoulder" and "the silent treatment." Plaintiff alleges that this treatment created a hostile work environment. On September 3, 2015, Plaintiff submitted a letter of resignation by email, effective October 2, 2015. Prudential terminated Plaintiff on September 17, 2015.

## LEGAL STANDARD

The Federal Rules of Civil Procedure provide for dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss made pursuant to Rule 12(b)(6), the court views well-pleaded factual allegations as true, but also requires the complaint to contain enough facts to state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The requirements for pleading a federal claim in federal court were set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009):

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint and matters properly subject to judicial notice. *Akhatar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (citation omitted). However, a court "may consider a writing referenced in a complaint but not explicitly incorporated therein if

the complaint relies on the document and its authenticity is unquestioned." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (citation omitted).

## DISCUSSION

Plaintiff's First Amended Complaint brings claims for discrimination and retaliation under state and federal law, breach of contract, promissory estoppel, and fraud. Prudential moves to dismiss the complaint.

### I.    Discrimination

Plaintiff brings claims for discrimination under ORS 659A.030 and 42 U.S.C. § 1981. Claims brought under ORS 659A.030 and 42 U.S.C. § 1981 are analyzed under the same legal standards. *See DeWeese v. Cascade General Shipyard*, 2011 WL 3298421, at *7 (D. Or. May 9, 2011) ("The same legal standards apply when analyzing claims brought pursuant to [ORS 659A.030, 42 U.S.C. § 1981, and Title VII].").

To state a claim for discrimination, a plaintiff must allege facts showing that (1) he belongs to a protected class; (2) he was performing according to his employer's legitimate expectations; (3) he suffered an adverse employment actions, and (4) other employees with qualifications similar to his were treated more favorably. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

To prevail on his claims for discrimination, Plaintiff must establish a prima facie case of discrimination. *Vasquez v. Cty. of Los Angles*, 349 F.3d 634, 640 (9th Cir. 2003).

> If the plaintiff succeeds in doing so, then the burden of shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory conduct. If the defendant provides such a reason, the burden shifts back to the plaintiff to show that the employer's reason is a pretext for discrimination.

*Id.*

To establish a prima facie case, a plaintiff "must offer evidence that gives rise to an inference of unlawful discrimination, either through the framework set forth in *McDonnell Douglas Corp. v. Green* [411 U.S. 792 (1973)] or with direct or circumstantial evidence of discriminatory intent." *Id.* (internal quotation marks and citations omitted).

In this case, Plaintiff asserts that he can meet this burden both through direct evidence of discrimination and under the *McDonnell Douglas* framework.

## A. Direct Evidence of Discrimination

Direct evidence of discriminatory intent is "evidence which, if believed, proves the fact of discriminatory animus without inference or presumption." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998) (internal quotation marks and citation omitted). Plaintiff asserts that he has sufficiently alleged direct discrimination in that he alleged that (1) Prudential, acting through Johnston, racially discriminated against Cox by preventing Cox from providing the Hawaii territory to Plaintiff; (2) management ignored Plaintiff at social events; (3) management gave Plaintiff the cold shoulder and the silent treatment; (4) Prudential failed to provide Plaintiff with the Hawaii territory; (5) Prudential failed to properly consider Plaintiff for promotion to Cox's position; (6) Prudential failed to investigate Plaintiff's complaints of race and color discrimination; and (7) Prudential failed to investigate Plaintiff's complaints about not receiving the Hawaii territory.

### 1. "Zone of Interests"

Plaintiff's first claim of direct discrimination relies not on any alleged racial discrimination against Plaintiff, but rather against Cox. Prudential asserts that Plaintiff lacks standing to pursue this claim. In the context of Title VII, the Supreme Court has held that a plaintiff may not sue unless he falls within the "zone of interests" sought to be protected by the

statutory provisions which form the basis for his complaint. *Thompson v. N. Am. Stainless LP*, 562 U.S. 170, 177-78 (2011). The "zone of interests" test "den[ies] a right of review if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Id.* at 178 (quotation marks and citation omitted). In order to fall within this "zone of interests," the plaintiff cannot be an "accidental victim" or "collateral damage" of the employer's unlawful act. *Id.*

Prudential asserts that Plaintiff's claims do not fall within the "zone of interests" protected by either 42 U.S.C. § 1981 or ORS 659A.030. Plaintiff does not respond to this argument, except to reiterate his claims as alleged in the First Amended Complaint. I find Prudential's argument persuasive. Even accepting the allegations contained in the FAC as true, Plaintiff has only alleged that he is "collateral damage" in discrimination aimed at Cox. This is not sufficient to establish a right to sue under 42 U.S.C. § 1981 or ORS 659A.030.

## 2. Racially Discriminatory Motive

Although Plaintiff's first claim of direct discrimination relates to Prudential's alleged discrimination against Cox, Plaintiff's other claims allege that he was discriminated against on the basis of his own race.

In order to sustain such a claim, a plaintiff must allege sufficient facts to show that he was discriminated against based on race. *See Akmal v. Centerstance, Inc.*, 592 F. App'x 601, 602 (9th Cir. 2015) (affirming dismissal where the plaintiff "failed to allege facts sufficient to show that the alleged conduct was due to her race or because she engaged in a protected activity."); *Chocktoot v. Marquis Cos. I, Inc.*, No. 1:12-CV-2323-PA, 2013 WL 1953589, at *1

(D. Or. May 10, 2013) (dismissing a claim for failure to allege specific facts showing discrimination based on race).

In this case, Plaintiff has not pleaded any specific facts to show that any of the alleged conduct was motived by a racially discriminatory animus.

### 3. Hostile Work Environment

Plaintiff's second and third claims of direct discrimination relate to management ignoring him at social functions and giving him the cold shoulder and the silent treatment. Plaintiff alleges that this created a hostile work environment. To state a claim for a hostile work environment, a plaintiff must show that (1) the defendant subjected him to verbal or physical conduct based on his race; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment. *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008).

On the first element, Plaintiff provides only conclusory allegations to show that the conduct was related to his race. As for the other elements, courts must consider "all the circumstances, including the frequency of the allegedly discriminatory conduct, its severity, and whether it unreasonably interferes with an employee's work performance." *Id.* In this case, Plaintiff has not made any factual allegations regarding how frequently he was subjected to social snubbing, nor does he allege who ostracized him other than a generalized allegation that it was done by "management." Similarly, Plaintiff does not meet his burden in demonstrating the severity of this social snubbing. Courts in this district have held that the "silent treatment" is not sufficient to sustain a claim for retaliation under Title VII. *Jernigan v. Alderwoods Grp., Inc.*, 489 F. Supp.2d 1180, 1202 (D. Or. 2007); *see also Leland v. U.S. Bank. NA*, No. CV-98-454-ST, 1999 WL 778569, at *9 (D. Or. Sept. 22, 1999) (being ostracized or given the "cold shoulder" is

not enough to sustain a claim for hostile work environment).  Nor does Plaintiff allege that being ostracized interfered with his work performance.  I conclude that this claim is insufficiently pleaded.

### 4.  Failure to Promote

At some point, Cox left his position at Prudential and Plaintiff applied to fill the vacancy. Plaintiff alleges that "the position was filled by a non-Asian who has much less experience than Plaintiff in the industry."  As previously noted, Plaintiff does not provide any factual allegations to support the conclusion that Prudential's decision to hire a different candidate was driven by a racial animus.  Plaintiff does not allege what the requirements of Cox's position were, or any other potentially relevant criteria, such as Plaintiff's performance with the company.  Also notably absent is any allegation that the person selected had equal or inferior qualifications relative to Plaintiff, merely that he had less experience in the industry.[1]  I conclude that Plaintiff has failed to adequately plead direct discrimination on the basis of failure to promote.

### 5.  Failure to Investigate

Plaintiff alleges that Prudential's investigation into his internal complaints about unfair treatment and racial discrimination was insufficient because it did not find evidence of discrimination.  Plaintiff does not provide any other factual allegations to support his claim that Prudential's investigation was insufficient.  Such circular reasoning is insufficient to sustain a claim for discrimination.

---

[1] The factual allegations in the First Amended Complaint indicate that Plaintiff worked for Prudential for less than two years.  The FAC does not clearly allege when Cox left Prudential or when Plaintiff sought promotion to Cox's position.  In order to support a plausible claim for failure to promote, a plaintiff whose tenure with the employer was brief must plead that he was eligible for the promotion in question. *Rubadeau v. M.A. Mortenson Co.*, No. 1:13-cv-339 AWI JLT, 2013 WL 3356883, at *4 (E.D. Cal. July 3, 2013).

## 6. Constructive Discharge

Finally, Plaintiff alleges that he was constructively discharged in retaliation for his internal complaint.[2] To state a claim for constructive discharge, a plaintiff must show that "the abusive working environment became so intolerable that her resignation qualified as a fitting response." *Pa. State Police v. Suders*, 542 U.S. 129, 134 (2004). The Ninth Circuit requires a plaintiff to establish that the employer "create[d] working conditions that are 'sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood.'" *Poland v. Chertoff*, 494 F.3d 1174, 1186 (9th Cir. 2007) (quoting *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000)). "Where a plaintiff fails to demonstrate the severe or pervasive harassment necessary to support a hostile work environment claim it will be impossible for her to meet the higher standard of constructive discharge: conditions so intolerable that a reasonable person would leave the job." *Brooks*, 229 F.3d at 930.

In this case, Plaintiff does not clearly plead what the intolerable working conditions were, other than "being treated as an outsider." As discussed above, the social ostracism alleged by Plaintiff does not suffice to state a claim for hostile work environment. It cannot, therefore, sustain a claim for constructive discharge.

## B. *McDonnell Douglas*

In the alternative, Plaintiff asserts that he could establish discrimination under the *McDonnell Douglas* framework regarding Prudential's decision to assign the Hawaii territory to a different employee and its decision to not to promote Plaintiff to fill Cox's position. To

---

[2] Plaintiff does not precisely plead a claim for constructive discharge in the FAC, but alleges that he had "no reasonable alternative but to resign his position," and that he was "terminated," as part of his claims for discrimination and retaliation under ORS 659A.030 and 42 U.S.C. § 1981. In his Response, Plaintiff more clearly argues that he was constructively discharged.

establish a prima facie case of discrimination under the *McDonnell Douglas* framework, a plaintiff must show:

> (1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination.

*Fonseca v. Sysco Food Serv. of Ariz., Inc.*, 374 F.3d 840, 847 (9th Cir. 2004) (internal quotation marks and citations omitted).

In this case, there is no dispute that Plaintiff is a member of a protected class or that he was qualified for his position as Sales Vice President.

Plaintiff's claim for discrimination based on a failure to promote suffers the same problems under the *McDonnell Douglas* framework as it did under a theory of direct discrimination. On the claim for failure to promote, Plaintiff has not alleged sufficient facts about the position Plaintiff sought or the individual who was selected to fill it to plausibly state a claim. With regard to the Hawaii territory, the FAC alleges that Prudential assigned Hawaii to a colleague as "part of a resolution to a conflict over some other promises that were not being honored." The FAC provides no details about the employee who received the Hawaii territory and, contrary to Plaintiff's claims, actually alleges that the decision to assign the Hawaii territory to that individual was not motivated by a desire to discriminate against Plaintiff.

## II.    Retaliation

Plaintiff brings claims for retaliation under ORS 659A.199[3], ORS 659A.030 and 42 U.S.C. § 1981. As previously noted, claims brought under ORS 659A.030 and 42 U.S.C. § 1981 are analyzed under the same legal standards.

---

[3] ORS 569A.199 forbids employers from retaliating against employees who have "in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule, or regulation." The

To state a claim for retaliation under ORS 659A.030 and 42 U.S.C. § 1981, a plaintiff must allege facts showing (1) that he engaged in protected activity; (2) that his employer subjected him to adverse employment actions; and (3) that there is a causal link between the protected activity and the adverse action. *Manatt v. Bank of America, NA*, 339 F.3d 792, 800 (9th Cir. 2003). Similarly, to state a claim for retaliation under ORS 659A.199, a plaintiff must show that he (1) engaged in a protected activity; (2) suffered an adverse employment action; and (3) that there was a causal link between the protected activity and the adverse employment decision. *Neighorn v. Quest Health Care*, 870 F. Supp.2d 1069, 1102 (D. Or. 2012).

To show a causal link between an alleged protected activity and an adverse employment action, a plaintiff must show that the protected activity constituted the "but-for cause" of the employer's adverse employment action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, ___ U.S. ___, 133 S. Ct. 2517, 2533 (2013). "Oregon courts use a 'substantial factor' test, but construe the test as a 'but-for' standard." *Lindsey v. Clatskanie People's Util. Dist.*, ___ F. Supp. 3d ___, Case No. 3:14-cv-485-SI, 2015 WL 6443290, at *5 (D. Or. Oct. 23, 2015) (citing *Hardy v. Legacy Health Sys.*, 167 Or. App. 425, 436 (2000)).

A plaintiff may satisfy the causation element through "circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987). In *Yartzoff*, the Ninth Circuit held that there was sufficient evidence of causation where the adverse actions occurred less than three months after the plaintiff filed an administrative complaint, two weeks after the charge was investigated, and less than two months after the investigation ended. *Id.* If the temporal proximity is not

---

First Amended Complaint refers to Plaintiff's claim under ORS 659A.199 as a claim for discrimination, but the essence of the claim is retaliation. In his Response, Plaintiff also characterizes this claim as retaliation, rather than discrimination.

"very close," some other evidence is required to satisfy the causation element. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). "[W]here an adverse employment action follows on the heels of protected activity," however, time alone suffices to show causation. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002).

In this case, Plaintiff alleges that he was retaliated against for his internal complaint about racial discrimination. The adverse employment actions are essentially the same as those alleged in Plaintiff's claims for discrimination: the decision to assign the Hawaii territory to another employee, the decision not to promote Plaintiff to replace Cox, social ostracism amounting to a hostile work environment, and constructive discharge.

Some of the conduct alleged in the FAC and relied upon by Plaintiff does not constitute adverse employment actions. The Ninth Circuit has held that "mere ostracism" in the workplace does not constitute an adverse employment action. *Ray v. Henderson*, 217 F.3d 1234, 1241 (9th Cir. 2000); *Strother v. S. Cal. Permanente Med. Grp.*, 79 F.3d 859, 869 (9th Cir. 1996). Plaintiff cannot, therefore, rely on being ignored at social functions or being given the cold shoulder or the silent treatment to sustain a retaliation claim.

Turning then to the causation element, Plaintiff alleges that he made the internal complaint about racial discrimination after he learned that the Hawaii territory was assigned to another employee. The decision to assign the Hawaii territory to another employee could not, therefore, have been motivated by Plaintiff's complaint.

More generally, Plaintiff seems to rely on the timing of the adverse actions to sustain the causation element of his retaliation claims. The FAC does not allege when Plaintiff made his internal complaint, when Prudential commenced its investigation, or when that investigation was concluded. Nor does Plaintiff allege when the other adverse actions occurred, other than that it

was some time after he made the internal complaint. "The mere fact that the adverse actions took place after plaintiff's protected activity is not sufficient by itself to give rise to an inference of a causal link." *Lacayo v. Donahoe*, No. 14-cv-04077-JSC, 2015 WL 3866070, at \*12 (N.D. Cal. June 22, 2015) (quoting *Knox v. Donohoe*, No. C-11-2596 EMC, 2012 WL 949030, at \*9 (N.D. Cal. Mar. 20, 2012)).

It is impossible to determine whether Plaintiff can make out a plausible claim for retaliation without more specific factual allegations, either to establish the temporal proximity of the events or to establish some other causal connection between them.

## III. Breach of Contract

Plaintiff alleges that Prudential's promise to assign the Hawaii territory to Plaintiff constituted an enforceable contract, which Prudential breached.

### A. At-Will Employee

Absent some agreement to the contrary, an employment contract is at-will under Oregon law. *Albrant v. Sterling Furniture Co.*, 85 Or. App. 272, 275 (1987).

> That means that an employer ordinarily may discharge an employe[e] for any reason and at any time. It follows that an employer may also modify the employment contract so long as the modification applies only prospectively. An employe[e] impliedly accepts such modifications by continuing employment after the modification.

*Id.* (internal citations and footnotes omitted); *see also Elliot v. Tektronix, Inc.*, 102 Or. App. 388, 393 (1990) ("[A]n at will employer may make unilateral changes in employment terms, notwithstanding its previous representations, and not be subject to contract liability[.]"); *Fish v. Trans-Box Sys., Inc.*, 140 Or. App. 255, 259 (1996) ("The law is well established that an employer may modify an at-will employment relationship unilaterally.").

Plaintiff does not dispute that his employment with Prudential was at-will, but contends that Prudential's promise of the Hawaii territory created a reasonable expectation which is enforceable as a contract. An action to enforce such promises relies on the benefit or right in question having vested. *See Funkhouser v. Wells Fargo Corp.*, 224 Or. App. 308, 312 (2008) ("Under such contracts, an employer may prospectively modify or eliminate benefits that the employee has not already earned as compensation for his or her work, that is, benefits that have not vested, at the time of elimination."); *Furrer v. Sw. Or. Cmty. Coll.*, 196 Or. App. 374, 379-80 (2004) ("Once the employee embarks on performance, the employer cannot unilaterally modify the resulting contract so as to alter rights that have vested under it.").

"An employee's right to an employment benefit vests when that employee has satisfied all conditions precedent to eligibility for the benefit under the employer's policy." *Funkhouser*, 224 Or. App. at 312; *see also State ex rel. Roberts v. Pub. Fin. Co.*, 294 Or. 713 (1983) (employee did not have a vested right to vacation pay because he was terminated before the right would have vested). The cases cited by Plaintiff bear this out. *See Sabin v. Willamette-Western Corp.*, 276 Or. 1083, 1089 (1976) (plaintiff had earned two weeks of vacation and was denied the vacation pay when he was terminated); *Wyss v. Inskeep*, 73 Or. App. 661, 667-68 (1985) (plaintiff had a vested right to be considered for year-end bonuses); *Swenson v. Legacy Health Sys.*, 169 Or. App. 546, 549-52 (2000) (plaintiff had a vested right to a larger severance package because she worked through an agreed-upon date); *Furrer*, 196 Or. App. at 381 (finding that a change in retirement policy repudiated a contractual promise to pay early retirement benefits to eligible employees).

"The question of when a benefit is earned or vested will vary in each case depending on the terms of the contract and the nature of the promised benefit." *Olson v. F&D Publi'g Co.*,

*Inc.*, 160 Or. App. 582, 588-89 n. 5 (1999). "[E]ven in the absence of an express agreement, an employer's establishment of certain terms or conditions of employment may amount to an offer of a unilateral contract; in such instances, the employee's part performance precludes the employer from revoking what it offered in exchange for the employee's work." *Swenson*, 169 Or. App. at 554 n. 4 (2000). However, as previously noted, "in the absence of an agreement to the contrary, an employer has the right to modify benefits unilaterally and prospectively; by continuing to work after learning of it, an employee impliedly accepts that modification." *Id.* at 553-54.

In this case, Plaintiff alleges that he was told that he would receive the Hawaii territory and that by accepting employment with Prudential he tendered part performance and that Prudential is liable for breaching the contract. Prudential's offer of employment, which Plaintiff accepted, offered him the position of "Regional Sales Vice President for Prudential's Oregon territory." Moses Decl. Ex. 1, at 1.[4]  By accepting Prudential's offer, which refers only to the Oregon territory and contains no reference to the Hawaii territory,[5] Plaintiff cannot plausibly allege that he tendered partial performance in the expectation of receiving the Hawaii territory. Furthermore, Plaintiff alleges he learned that the Hawaii territory had been assigned to another employee at a new employee orientation.  Plaintiff was thereby made explicitly aware that Prudential had unilaterally modified its alleged promise to provide Plaintiff with the Hawaii territory and, by continuing in his employment with Prudential, Plaintiff impliedly accepted that modification.  Plaintiff does allege that he went to Cox, who assured Plaintiff "that the matter

---

[4] Ordinarily, a district court may not consider any material outside of the pleadings when ruling on a Rule 12(b)(6) motion, but a court may properly consider documents "whose contents are alleged in a pleading and whose authenticity no party questions, but which are not physically attached to the pleading." *Failey v. Donahoe*, No. 3:11-cv-01088-HU, 2013 WL 1294697, at *7 (D. Or. Mar. 26, 2013) (quotation marks and citations omitted). The contents of Prudential's offer letter are alleged in the FAC and no party has disputed the exhibit's authenticity.
[5] Plaintiff does not, for instance, allege that Hawaii was part of Prudential's Oregon territory.

would be resolved" and that Cox attempted to "set the deal straight," but such allegations lack the specificity needed to determine when, if ever, such a benefit would have become vested and enforceable.

### B.  The Existence of an Enforceable Contract

Plaintiff's claim for breach of contract is not free of other defects.  To state a claim for breach of contract, a plaintiff must allege "the existence of a contract, its relevant terms, plaintiff's full performance and lack of breach and defendant's breach resulting in damage to plaintiff." *Slover v. Or. State Bd. of Clinical Soc. Workers*, 144 Or. App. 565, 570 (1996) (internal quotation marks and citation omitted). "Oregon subscribes to the objective theory of contract, which provides that the existence and terms of a contract are determined by evidence of the parties' communications and acts." *Rhoades v. Beck*, 260 Or. App. 569, 572 (2014).

The FAC provides few details about the alleged contract.  Plaintiff does not, for instance, allege what he was to be paid if he had been given the Hawaii territory.  He does not allege whether he would receive the Hawaii territory in addition to the Oregon territory, or what his responsibilities would be.  Without more specific factual allegations, I must conclude that Plaintiff has not adequately pleaded a claim for breach of contract.

### IV.   Promissory Estoppel

Plaintiff asserts a claim of promissory estoppel, alleging that Prudential promised him the Hawaii territory in order to induce him to accept a position with Prudential.  The elements of promissory estoppel are "(1) a promise, (2) which the promisor, as a reasonable person, could foresee would induce conduct of the kind which occurred, (3) actual reliance on the promise, (4) resulting in a substantial change in position." *Furrer*, 196 Or. App. at 382 (2004).

"[T]he majority rule in this country is that any promise which is to serve as the basis for a promissory estoppel claim or defense be as clear and well defined as a promise that could serve as an offer, or that otherwise might be sufficient to give rise to a traditional contract supported by consideration." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1106 (9th Cir. 2009) (internal quotation marks and citation omitted). As discussed in the context of Plaintiff's claim for breach of contract, the FAC contains very little in the way of detail about Prudential's alleged promise to provide the Hawaii territory. There is, for instance, no allegation about what Plaintiff's responsibilities were to be or what he would be paid. Plaintiff has not alleged sufficient facts to show a "clear and well defined" promise.

"[P]romissory estoppel derives from a promise that induces reasonably foreseeable, detrimental reliance[.]" *Barnes*, 570 F.3d at 1108; *see also Houston v. Yoncalla Sch. Dist. No. 32*, No. 6:13-cv-01318-AA, 2014 WL 3514984, at *12 (D. Or. July 11, 2014) (granting a motion to dismiss because "plaintiff does not allege sufficient detrimental reliance to sustain a claim for promissory estoppel."). In this case, as in *Houston*, Plaintiff has not adequately alleged a substantial change in position or detrimental reliance. Plaintiff does not, for instance, allege that he rejected other employment opportunities in order to accept a position with Prudential.

## V. Fraud

Finally, Plaintiff alleges that Prudential fraudulently induced him to take a position by falsely representing that Plaintiff would receive the Hawaii territory. Prudential moves to dismiss this claim on the basis that Plaintiff has failed to meet either the special pleading requirements under Rule 9 or the common law elements of a fraud claim.

Under Oregon law, the elements of fraud are:

(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) [the speaker's] intent that it should be

acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) [the hearer's] reliance on its truth; (8) [the hearer's] right to rely thereon; (9) and [the hearer's] consequent and proximate injury.

*Wieber v. FedEx Ground Package Sys. Inc.*, 231 Or. App. 469, 480 (2009) (quotation marks and citation omitted).

Claims for fraud must be pled with particularity. *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.   Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). A plaintiff must "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schrieber Distrib. Co. v. ServWell Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks and citation omitted).

In this case, Plaintiff alleges that Johnston and Cox orally promised that he would receive the Hawaii territory in order to induce him to join Prudential. As Prudential points out, this satisfies the "who" and the "how" of the alleged fraud claim. As previously discussed, however, the FAC does not clearly allege "what" was promised, beyond a vague allegation that Plaintiff would be assigned to the Hawaii territory. Nor does the FAC allege when the promises were made, or where, or set forth the "specific content" of what Cox and Johnston promised Plaintiff.

Although knowledge and intent may be alleged generally, Plaintiff does not adequately plead that Cox and Johnston knew that their promise to provide the Hawaii territory was false at the time it was made. Elsewhere in the FAC, Plaintiff appears to allege that Cox always intended to provide Plaintiff with the Hawaii territory but was prevented from doing so.

Similarly, Plaintiff has not alleged any facts to support the conclusion that he suffered "consequent and proximate injury" as a result of his reliance on Prudential's promise of the Hawaii territory.

Without more specific factual allegations, Plaintiff's claim for fraud does not satisfy the requirements of Rule 9(b).

## VI.    Leave to Amend

If the court dismisses a complaint, it must decide whether to grant leave to amend. "A district court may deny a plaintiff leave to amend if it determines that allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency, or if the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies." *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010).

In its motion, Prudential urges that dismissal be with prejudice, but Plaintiff has requested leave to amend. Although Plaintiff has already amended his complaint once and the allegations contained in the FAC are generally vague and conclusory, it is not impossible that some or all of Plaintiff's claims might be salvaged by the allegation of additional facts, as discussed above. Accordingly, dismissal shall be with leave to amend.

///////////////////////////////////////////

///////////////////////////////////

/////////////////////////////

//////////////////////

////////////

## CONCLUSION

Defendant's Motion to Dismiss (#10) is GRANTED. Plaintiff's First Amended Complaint (#7) is DISMISSED with leave to amend. Plaintiff shall have thirty (30) days from the date of this Order to file an amended complaint. Plaintiff is advised that failure to file an amended complaint within the allotted time will result in the entry of a judgment of dismissal.

It is so ORDERED and DATED this _____ day of May 2016.

OWEN M. PANNER
Senior District Judge